UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REYNOLDS FAMILY REVOCABLE TRUST U/A DATED 04/08/2015,<br>Plaintiff,<br>v.<br>CHARLES R. SCHWAB, et al.,<br>Defendants. | Case No. 23-cv-02938-RFL<br>**ORDER GRANTING MOTION TO DISMISS**<br>Re: Dkt. Nos. 42, 43 |

Plaintiff brings this derivative stockholder action on behalf of Charles Schwab ("Schwab") against its officers and directors ("Defendants") concerning the company's "robo-advisor" product, Schwab Intelligent Portfolios ("SIP"). The lawsuit alleges that, from March 2015 through November 2018, Schwab's officers and directors knowingly allowed the company to mislead SIP customers about how cash allocations were being set in their brokerage accounts. Allegedly, SIP automatically set customers' cash allocation to a minimum level that would reduce their expected investment return, but generate profits for Schwab based on the interest rate spread. Schwab allegedly misled customers by, among other things, claiming in a marketing brochure that the cash allocation level was based on algorithms to optimize customers' investment returns, when in fact those levels were set based solely on Schwab's revenue targets.

Plaintiff's claims were previously dismissed for failure to plead demand futility, as "the allegations [were] not sufficient to support a reasonable inference that half the [Demand Board] knew of the allegedly misleading statements in the disclosures and knew that the statements were

misleading." (Dkt. No. 37 ("Order") at 2.)[1] Specifically, the Complaint failed to allege facts from which it could be inferred that members of the Board were aware of the misleading language in the brochure at issue or that SIP set its cash allocations based purely on Schwab's internal revenue targets. (Order at 5–6.) The Court granted Plaintiff leave to file an amended complaint (Order at 7), which Plaintiff filed on June 24, 2024 (Dkt. No. 38 ("SAC")). In response, Defendants filed the present motion to dismiss, arguing that Plaintiff added no new factual allegations addressing the deficiencies the Court identified in its Order. (Dkt. No. 42.) Because the Second Amended Complaint ("SAC") still does not sufficiently allege that at least half of the Board faces a substantial likelihood of liability for knowingly misleading customers for profit, Defendants' motion to dismiss is **GRANTED**. This order assumes the reader is familiar with the facts, the applicable legal standard, and the arguments made by the parties.

***Knowledge of the statements at issue.*** This Court previously held it could not reasonably infer from the Board's "general supervision of the advertising and disclosure strategy that board members were aware of the misleading language in the brochure at issue" (Order at 5), and nothing in the SAC changes that result. In fact, as Defendants point out, the SAC raises no new factual allegations demonstrating that the Board "knew the content of any particular marketing or advertising campaign" or "knew of red flags alerting them to such misleading language" in the advertisements. (Order at 6–7.) Plaintiff again contends that it is reasonable to infer that Schwab's Audit Committee—comprised of a subset of the Board—were aware of the allegedly misleading brochure language because it discussed "Go/No Considerations" and "[m]arketing and communications plans approved as complete for [the SIP] launch," approved press releases about SIP, and reviewed issues with "regulatory reporting/FORM ADV filing processes." (SAC ¶¶ 88, 92 125, 129, 132). But these allegations are nearly identical to those already raised in the First Amended Complaint (Dkt. No. 16 ("FAC")) and dismissed as insufficient to support knowledge in the Court's Order. (FAC ¶¶ 81, 85, 88, 116, 120; Order at 5 n.3.)

---

[1] Page numbers reflect the pagination applied by the court's electronic case filing system.

The only new allegation arguably relevant to this inquiry is the allegation that David Garfield, a member of Schwab's board (but not the Demand Board, as he passed away prior to the filing of the lawsuit), knew of misleading language in the brochures because he was responsible for "prepar[ing] registration, disclosure, forms, and contractual documents and provided design counseling to enable SIP advisory program." (SAC ¶ 86.) But even if those allegations were enough to establish Garfield's knowledge, Plaintiff fails to adequately allege that Garfield communicated this knowledge to members of the Demand Board. (*See* SAC ¶ 85 (alleging generally that Garfield presented to the Board about the "SIP program's goals and accomplishments").)

***Knowledge of the misleading nature of the statements.*** Plaintiffs also fail to adequately allege that at least half of the Board had knowledge of the misleading nature of the statements at issue. In order for the Board to understand that those statements were misleading, they would also have to know that SIP's cash allocation was set based on Schwab's revenue targets rather than traditional risk/reward considerations.

Plaintiff first argues that it is reasonable to infer this knowledge from the Board's awareness that the SIP program made money while charging no fees. Plaintiff relies on allegations—most of which were also present in the FAC—that the Board characterized SIP's cash component as a "Key Revenue Driver[]" and frequently discussed SIP's revenue numbers and growth strategy. (SAC ¶ 96). But, as explained in the prior dismissal order, the Board's knowledge that SIP's cash allocations generated revenue is not a basis to infer that the Board knew the algorithm for setting the cash allocation level in customers' accounts (*see* Order at 6), and the SAC adds no new allegations that would change that outcome. Plaintiff points to a new allegation in the SAC stating that on April 22, 2015, members of the Board asked questions about a competing product called Institutional Intelligent Portfolios and how it differed from SIP. (SAC ¶ 99.) But those allegations are not specific enough to support a reasonable inference that the Board learned about SIP's cash allocation algorithm in that meeting. Plaintiff also argues that former board member Garfield—who was responsible for "provid[ing] analysis and

regulatory decision support to key corporate initiatives including [SIP]" (SAC ¶ 86)—knew through his role the details of how SIP's cash allocations were preset to drive revenue. However, the SAC alleges no facts supporting this conclusion, and, as discussed above, also fails to allege that Garfield shared this knowledge with any members of the Demand Board.

Plaintiff further argues that the Board's knowledge can be reasonably inferred from its discussions about SIP's auto-rebalancing feature, which allegedly kept the cash allocation of SIP accounts above 10%, and assumptions that SIP's cash allocation would remain at around 10% for future growth and revenue forecasting purposes. (*See, e.g.*, SAC ¶ 83 (alleging that the Board discussed revenue assumptions for SIP, the "average account size" for SIP that supported those revenue assumptions, the "account minimum" for SIP, and the "account minimums of competitors")). But these allegations are nearly identical to those already found insufficient in the FAC. (*See* FAC ¶¶ 106–07 (discussing 10% cash allocation assumption in financial projections); FAC ¶ 131 (discussing auto-rebalancing); FAC ¶ 132 (showing that the "SIP Min" for cash was at 10.6% during rebalancing)). In any event, the fact that the cash allocation for customers' SIP accounts has historically hovered around 10% and is projected to remain at 10% in the future does not give rise to reasonable inference that the cash allocation is rigged to optimize Schwab's profits.

Lastly, Plaintiff cites the core operations theory to support the Board's knowledge. Specifically, Plaintiff contends that SIP's cash allocation strategy was so critically important to Schwab's overall business strategy that the Board must have known how SIP's cash allocation algorithm works. Though it may be plausible to infer that boards have a greater interest in and knowledge of developments related to products that are critical to the company's success, the fact that SIP accounted for less than 0.08% of Schwab's assets under management cuts against an inference that SIP's cash allocation mechanism "is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 786 (9th Cir. 2008). Moreover, though SIP may have been a significant topic of interest to the Board, and the Board may have known that the cash allocation

generated significant revenue, that still does not provide a plausible basis to infer that the Board understood specifically that SIP's cash allocation algorithm was based principally on Schwab's revenue targets.

***Redactions.*** Plaintiff alleges that the redacted portions of the documents Schwab produced under Section 220 of the Delaware General Corporation Law support an inference that the Board knew of both the language at issue in the brochure and its misleading nature (SAC ¶¶ 82, 84, 86, 89–90, 93, 96–97, 99–100, 103–04.) Such an inference cannot reasonably be drawn. The parties stipulated that Schwab would "redact any portions of any documents produced to the extent that such documents contain information that does not relate or refer to the subject matters of the Demand" (Dkt. No. 44-1 at 3), and there is no indication—and Plaintiff does not expressly argue—that the Schwab's redactions improperly hid relevant material.[2] The documents mostly consist of meeting minutes and slide decks that do not appear to be solely about SIP, in which case heavy redactions are to be expected. *Cf. In re McDonald's Corp. Stockholder Derivative Litig.*, 289 A.3d 343, 376 (Del. Ch. 2023). Thus, Plaintiff's conclusory allegations that the redactions would support an inference of scienter are insufficient to establish demand futility. *Clem v. Skinner*, No. 2021-0240-LWW, 2024 WL 668523, at *5 (Del. Ch. Feb. 19, 2024) (courts "cannot rely on 'conclusory allegations' or 'inferences that are not objectively reasonable'").

***Independence.*** Because Plaintiff has not adequately pled demand futility as to *any* of the sixteen members of the Demand Board, the Court need not consider Plaintiff's argument that demand is futile as to five of the Board members due to their lack of independence.

* * *

For the reasons described above, Schwab's motion to dismiss is **GRANTED**. Plaintiff has already had multiple attempts to plead a viable claim, including after having the benefit of

---

[2] Defendants' request for judicial notice of these portions of the Confidentiality Agreement between the parties is **GRANTED**. The portions of that agreement concerning redactions are incorporated by reference in the Second Amended Complaint, which alleges that certain adverse inferences should be drawn from the redactions. The agreement's provisions are directly relevant to the plausibility of those allegations and what inferences can be drawn from them.

the analysis in the prior dismissal order, but has not been able to correct the identified deficiencies. Accordingly, leave to amend is denied as futile. The Second Amended Complaint is dismissed with prejudice. The Clerk of the Court shall enter judgment in favor of Defendants and close the case.

**IT IS SO ORDERED.**

Dated: March 3, 2025

RITA F. LIN
United States District Judge